IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Name and address of Plaintiff: (See Complaint)

_____
_____
_____

     v.

Full name, title, and business address
of each defendant in this action:
1._____
_____
_____

2._____
_____

Use additional sheets, if necessary
Number each defendant.

**RECEIVED**

AUG 28 2019

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Plaintiff brings this action against the above named and identified defendants on the following cause of action:

I.    Where are you now confined? SCI-Houtzdale

      What sentence are you serving? 25 years - 75 years

      What court imposed the sentence? Philadelphia

II.   Previous Lawsuits

    A. Describe any and all lawsuits in which you are a plaintiff which deal with the same facts involved in this action. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

      1. Parties to this previous lawsuit

        Plaintiffs Troy Cooper

        Defendants Michelle Green

      2. Court (if federal court, name the district; if state court, name the county) and docket number
        Western District

3. Name of judge to whom case was assigned  Forgot

4. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)  Case was dismissed

5. Approximate date of filing lawsuit  2005

6. Approximate date of disposition  2007

B. Prior disciplinary proceedings which deal with the same facts involved in this action:

Where?  N/A
When?  N/A
Result:  N/A

III. What federal law do you claim was violated?  8th Amendment

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)  (See Complaint

A. Date of event: _____

B. Place of event: _____

C. Persons involved--name each person and tell what that person did to you: _____

_____
_____
_____
_____

V. Did the incident of which you complain occur in an institution or place of custody in this District? If so, where?
   SCI-Houtzdale

   and answer the following questions:

A. Is there a prisoner grievance procedure in this institution?
   Yes (✓)  No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
   Yes (✓)  No ( )

C. If your answer is YES,

   1. What steps did you take? Submitted several grievances

   2. What was the result? All grievances were denied

D. If your answer is NO, explain why not: _____

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities?
   Yes ( )  No ( )

F. If your answer is YES,

   1. What steps did you take? _____

   2. What was the result? _____

VI. Relief (See Complaint

   State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.

   _____
   _____
   _____

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____ 8/25/19 _____                    _____[signature]_____
(Date)                                 (Signature of Plaintiff)

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TROY COOPER, pro se,
              Plaintiff,

     v.

JOHN WETZEL, in his individual capacity as
Secretary of the Pennsylvania Department of Corrections,

BARRY SMITH, in his individual capacity as
Superintendent at SCI-Houtzdale,

DAVID J. COLE, in his individual capacity as Deputy
Superintendent at SCI-Houtzdale,

BOBBI JOE SALAMON, in her individual capacity as
Deputy Superintendent at SCI-Houtzdale,

MR. FETSKO, in his individual capacity as Psychiatrist
at SCI-Houtzdale,

MICHELLE IVICIC, in her individual capacity as
Program Manager at SCI-Houtzdale,

MRS. SECHRENGOST, in her individual capacity as
Health Care Administrator at SCI-Houtzdale,

JOHN DOE, in his individual capacity as a Registered
Nurse at SCI-Houtzdale

JANE DOE, in her individual capacity as a Registered
Nurse at SCI-Houtzdale
              Defendants.

I. Introduction

1. This action seeks to stop the cruel and unusual punishment being inflicted on the Plaintiff, diagnosed with serious mental illnesses. The Plaintiff is confined in the Restricted Housing Unit (RHU) under horrific conditions. Plaintiff is held under the Restricted Release List (RRL) status, through an unconstitutional process that offers no notice nor hearing before placement, takes no account of and exacerbated Plaintiff's mental illnesses. Defendants mistreatment of Plaintiff violates his rights under the Eighth and Fourteenth Amendment to the United States Constitution.

2. Plaintiff is housed in the Diversionary Treatment Unit (DTU) inside the RHU. Because of Plaintiff's diagnosed PTSD, major depression and other mental illnesses he is in his cell at least 22 hours a day. The lights are on in his cell at all times. Virtually no mental health care. Denied the ability to any physical exercise. Denied the ability to work, participate in educational or rehabilitative programs. No contact with other human beings.

3. Prolonged isolation under these extremely harsh conditions exacerbates the symptoms of the Plaintiff's mental illness, which include flashbacks, nightmares, sleeplessness, hallucinations, hopelessness, paranoia, suicidal thoughts every second of everyday and attempted suicides.

4. The result is a continuous torture and nightmare. Because of Plaintiff's mental illness he's trapped in an endless cycle of isolation, punishment and torture. Further deterioration of Plaintiffs' mental illnesses deprivation of adequate mental health treatment and inability to qualify for parole.

5. Defendants knows or is deliberately indifferent to the fact that the DOC and SCI-Houtzdale's treatment of Plaintiff who's mental ill, including the practice of segregating Plaintiff for indefinite amount of time in RHUs, has caused grave harm to Plaintiff's mental health and physical health. Even after legal settlements and so-called changes to mental health policies Defendants still display deliberate indifference to the effects of the DOC's and Houtzdale's mistreatment of Plaintiff. Houtzdale does not adequately consider Plaintiff mental illness, does not provide programs for mental illnesses; place prisoners without any mental illness on DTU to prey upon prisoners with mental illness causing severe harm to what little treatment is provided. And fails to take any reasonable steps to stop the risk of serious harm to

Plaintiff. Defendants deliberate indifference to the effect of the DOC and SCI-Houtzdale's policies and practices on Plaintiff systemically violates the Eighth and Fourteenth Amendment.

6. Plaintiff, Troy Cooper, is a Pennsylvania prisoner housed at SCI-Houtzdale. He is housed in the DTU under RRL status. He seeks an injunction requiring Defendants to cease violating the Eighth Amendment rights of the Plaintiff who had mental illnesses, provide Plaintiff constitutionally adequate mental health care, provide Plaintiff the opportunity at any physical exercise, provide RRL status prisoners any form of notice and hearing before placement on RRL, protect Plaintiff against dangerous and unconstitutional conditions of confinement. Plaintiff seeks punitive and compensatory damages of $100,000 respectfully.

II. <u>Jurisdiction and Venue</u>

7. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Plaintiff's claims are authorized by 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

9. Venue is appropriate in this district.

III. <u>Parties</u>

10. Plaintiff, Troy Cooper, pro se, is confined at SCI-Houtzdale. Before resorting to litigation, Plaintiff sought to put an end to SCI-Houtzdale's and DOC's systemic constitutional violation without judicial intervention, though grievances. Plaintiff has raised the lack of mental treatment received, the time languishing in the RHU with no chance at general population, the failure to provide proper footwear for physical exercise, the intentional refusal to follow nearly all DTU policies, the placement of Plaintiff on RRL without a hearing, the intentional delay of needed medications. Despite his efforts to resolve all unconstitutional acts, Defendants have persisted in their unconstitutional and unlawful policies and practices that has caused Plaintiff irreversible mental harm.

11. Defendant, John Wetzel, is the DOC's secretary. He is responsible for the oversight, operation and has sole jurisdiction over RRL prisoners. He receives regular reports regarding conditions in all state prisons, including RHUs, DTUs and RRL status prisoners, knows of disturbing facts regarding RHU and DTUs, regarding the treatment of prisoners with serious mental illnesses. He has been and continues to be deliberately indifferent to these problems. Def-

3

-endant Wetzel knows or is deliberately indifferent to the fact that the DOC's policies and practices regarding prisoners with mental illness causes great harm to Plaintiff's mental and physical well-being and has been deliberately indifferent to the extremely deleterious effects of these policies and practices on the Plaintiff who has mental illnesses. Defendant Wetzel knows or is deliberately indifferent to the fact that DOC's policies and practices regarding prisoners placed on RRL is used in a discriminatory manner against Black prisoners compared to white prisoners. Defendant Wetzel was a defendant in prior settled lawsuits and knows of the problems, agreed to make changes, yet conditions are worse. He is sued in his individual capacity for acts and omissions under color of state law.

12. Defendant, Barry Smith, is the Superintendent at SCI-Houtzdale. He is responsible for the oversight, operation and final decision maker at SCI-Houtzdale. He regularly sits on the Program Review Committee (PRC). He receives regular reports regarding conditions in the RHU and DTU here at SCI-Houtzdale. Defendant Smith knows of the disturbing facts regarding the DTU. Defendant Smith promotes and encourage the unconstitutional treatment of mental ill prisoners. Defendant Smith knows or is deliberately indifferent to the fact that SCI-Houtzdale refused to follow any policies set forth and promotes practices and policies that directly assault Plaintiff's mental illnesses. He is sued in his individual capacity for acts and omissions under color of state law.

13. Defendant David J. Close, is the Deputy Superintendent at SCI-Houtzdale. He is part of PRC. He is aware of the conditions in the DTU. He is aware that virtually no policies are followed in regard to DTU policies. Instead allows, condone and promote conditions that virtually assault Plaintiff's mental health. He is sued in his individual capacity for acts and omissions under color of state law.

14. Defendant, Bobbi Joe Salaman, is the Deputy Superintendent at SCI-Houtzdale. She is part of PRC. She is aware of the conditions in the DTU. She is aware that virtually no policies are followed in regard to DTU policies. Instead condone and promote conditions that directly assault Plaintiff's mental health. She is sued in her individual capacity for acts and omissions under color of state law.

15. Defendant, Tetsko, is the psychiatrist assigned to the DTU at SCI-Houtzdale. He is aware of the

conditions in the DTU. Yet, refuses to make changes or simply follow any of the policies of the DTU that ensures that atleast the barest minimal amount of mental health treatment is assured. Instead Defendant Fetsko goes along with the unconstitutional policies and practices formed under SCI-Houtzdale. He is sued in his individual capacity for acts and omissions under color of state law.

16. Defendant Michelle Ivicic, is the Program Manager at SCI-Houtzdale. She is part of PRC. She is aware of the conditions in the DTU. She is aware that virtually no policies are followed in regard to DTU policies. She is sued in her individual capacity for acts and omissions under color of state law.

17. Defendant, Sechrengost, is the Health Care Administrator at SCI-Houtzdale. She is responsible for the oversight and operation of the medical department. She is aware of or is deliberately indifferent to the fact that practices used by nurses causes great harm and suffering to Plaintiff's well-being. She is sued in her individual capacity for acts and omissions under color of state law.

18. Defendant, John Doe, is a Registered Nurse at SCI-Houtzdale. He is responsible for delivering medications and responding to emergency medical calls. He is sued in his individual capacity for acts and omissions under color of state law.

19. Defendant, Jane Doe, is a Registered Nurse at SCI-Houtzdale. She is responsible for delivering medications and responding to emergency medicals. She is sued in her individual capacity for acts and omissions under color of state law.

IV. Facts

A. Defendants Refusal To Follow Policies Puts Plaintiff in Grave Harm

20. On paper there is an admission criteria for the DTU. However, prisoners are put on the DTU that does not meet admission criteria. According to DOC's own policy prisoners must have a diagnosis of a Serious Mental Illness (SMI) or Intelligent Disability (ID) to be placed on the DTU. Defendants knows or is deliberately indifferent to the fact that putting prisoners on the DTU that is not SMI/ID prisoners to prey upon SMI/ID prisoners causes severe harm to Plaintiff's mental health.

5

21. Defendant Fetsko fails to develop Individual Recovery Plan (IRP). According to DOC's own policy IRPs must be done to set programming and help Plaintiff with his mental health issues. Defendants knows or is deliberately indifferent to the fact that IRPs are essential to Plaintiff's mental health treatment.

22. Defendants refuses to provide proper footwear in order to allow Plaintiff the opportunity to any physical exercise. Defendants refuses to allow Plaintiff to get his own sneakers even though other prisoners on RRL is allow their sneakers. Defendants knows or is deliberately indifferent to the fact that lack of physical exercise can cause severe harm to Plaintiff's mental and physical well-being.

23. On paper Defendants should allow psychology to have a part or say so during PRC. But, psychology has no role in PRC in reality. Defendants knows or is deliberately indifferent to the fact that psychology having no role in PRC can cause severe harm to Plaintiff's mental health.

24. On paper there's suppose to be one member of the psychology staff assigned to the DTU, but instead there is never one psych that makes rounds everyday. Leaving no chance of building a trusting relationship. And main psych only make rounds at most twice a week and only to sign Plaintiff up for groups. Defendants knows or is deliberately indifferent to the fact that there should be one member of psychology staff assigned to the DTU.

25. On paper once a week psychology is suppose to offer a Out-of-Cell (OOC) interview. But, Defendant Fetsko never offers Plaintiff an OOC contact. Defendants knows or is deliberately indifferent to the fact that refusing to offer a OOC counseling once a week causes severe harm to Plaintiff.

26. On paper SMI/ID prisoners are suppose to be awarded privileges, like TV, radios and tablets. But, Defendants refuses to awards privileges to SMI/ID prisoners causing the DTU prisoners to deteriorate even worst and act out more, which causes Plaintiff mental health to deteriorate. Defendants knows or is deliberately indifferent to the fact that leaving SMI/ID prisoners without nothing to do all day in their cells causes severe harm and directly impact Plaintiff's mental health.

27. Defendant allow and assign staff to the DTU that is not trained to work on the DTU and that hasn't completed Crisis Intervention Team Training (CITT). Causing c/o's to exacerbate Plaintiff's mental illness.

6

Defendants knows or is deliberately indifferent to the fact that CO's not trained to work the DTU but do causes severe mental harm to Plaintiff.

28. On paper CO Trainees (COTs) are not allowed to work on the DTU, but Defendants allow COTs to work the DTU daily. Defendants knows or is deliberately indifferent to the fact that allowing COTs to work on the DTU causes severe harm to the Plaintiff.

### B. Plaintiff is Subjected To Extreme Isolation and Inadequate Mental Health Care

29. Plaintiff is locked in his cell for approximately 22 hours a day everyday.

30. Plaintiff eats meals in his cell alone everyday.

31. Plaintiff is allowed in the yard usually 7:15am to 9am everyday. Plaintiff must be in a dog cage by himself. Plaintiff is not allowed to exercise because sneakers are denied.

32. Lights are left on in the cells all day making sleep almost impossible.

33. Plaintiff is shackled and handcuffed to a desk during group hours and because of PTSD is unable to attend groups.

34. DTUs are extremely loud, with banging cell doors, screaming and loud arguments all day. Most of the time the loudness, banging doors and arguments are a direct cause of Defendants unwillingness to allow DTU prisoners items like TV and radios. Items that DOC's own policy dictate must be awarded.

35. Non-contact visits are the only visits Plaintiff is allowed.

### C. DTU at SCI-Houtzdale Devastates The Plaintiff Mental Illness

36. Psychiatric literature has documented for over two hundred years the devastating effect of isolation on mental health. Isolation is predictably damaging to the Plaintiff with pre-existing mental illness. Despite these facts that the grave risk of exacerbating Plaintiff's symptoms Defendants ignores this. Plaintiff worsen in the DTU. Going from functioning to unable to go without contemplating suicide daily, experiencing flashbacks, nightmares, hallucinations, major depression and ultimately attempted suicides.

7

37. The National Commission on Correctional Health Cares 2008 Standard for Mental Health Services in Correctional Facilities (NCCHC) Standards direct that "inmates who are seriously ill should not be confined under conditions of extreme isolation." Similarly the American Psychiatric Association (APA), in its Position Statement on Segregation of Prisoners with Mental Illness, found that prolonged isolation segregation should be avoided with prisoners with serious mental illness due to the potential for harm to such prisoners. The APA defined "prolonged segregation" generally as segregation with a duration of greater than three to four weeks. Mentally ill prisoners languish in Pennsylvania's RHU, however, for months and for prisoners like the Plaintiff on RRL for years end.

### D. Defendants Consciously Disregards the Severe Harm That the DOC's Policies and Practices Inflicts on Plaintiff Who Has Mental Illness

38. On paper Defendants must consider Plaintiff's mental illness before conducting misconduct hearing and consider mental illnesses before sanction by hearing examiners. Yet, this is rarely done.

39. The NCCHC Standard state than an essential element of the treatment of prisoners with mental illness is a review by mental health staff of a prisoner's mental health record to determine whether existing mental health needs contraindicate placement in segregation or require accommodation. Defendants on paper has adopted this standard, but in reality it follows this standard. And psychology is so much in bed with corrections that no one would ever recommend this. And even if the Defendants determined that placement of a mentally ill prisoner, like Plaintiff, would negatively affect his health, Defendants still commit Plaintiff to prolong confinement indefinitely.

40. On paper DOC policy requires a psychologist or psychiatrist to interview and assess any prisoner in solitary confinement, especially Plaintiff who is "D" code prisoner, in practice any assessment recommending the removal of a mental ill prisoner from the RHU is rarely made, even when warranted. And there is no way a independent reputable psychologist or psychiatrist would never make this recommendation under these circumstances unless a truthful assessment is not done. Leaving prisoners like Plaintiff to languish in DTUs deteriorating mentally and suffering for years.

8

E. <u>Defendants Knows or is Deliberately Indifferent to the Damages</u>

41. Defendants has been and continue to be deliberately indifferent to the effect of DOC policies and practices with respect to the DTU on the well-being of Plaintiff's mental illness. Defendants knows or is deliberately indifferent to these effects through the numerous grievances submitted by Plaintiff, prior settled lawsuits, like DRN v. Wetzel, training, experience and personal knowledge.

42. Defendants knows or is deliberately indifferent to the fact that Plaintiff with mental illnesses will be held in DTU in solitary confinement for years suffering while on RRL status.

43. Defendants knows or is deliberately indifferent to the fact that the mental health professionals in the DTU at SCI-Houtzdale are grossly insufficient to treat Plaintiff and his mental illnesses and that Defendant Tetsko is completely in bed with the administration and such deficiency is due to Defendant Tetsko following Defendants orders and practices, even if going against professional standards and ethics, further causing deterioration of Plaintiff mental health.

44. Defendants knows or is deliberately indifferent to the fact that isolated confinement exacerbates the symptoms of Plaintiff's mental illness and result in further deterioration of Plaintiff's mental health.

45. Defendants knows or is deliberately indifferent to the fact that the DOC has failed to take adequate steps to ensure that Plaintiff who expresses suicidal thoughts and attempted suicide is not placed in solitary for any significant amount of time to deteriorate further.

46. Defendants knows or is deliberately indifferent to the fact that Plaintiff's mental illnesses while trapped in DTUs under RRL status suffers grievously without adequate medical and mental health care.

F. <u>Plaintiff Has Attempted To Resolve Unconstitutional Policies and Practices Through The Grievance Process and Basis of Complaint</u>

47. Detailed below is the exact experiences Plaintiff has gone through and how above unconstitutional policies and practices effect Plaintiff.

48. Plaintiff was placed on RRL status sometime after February 20, 2017 without ever receiving any notice or

9

hearing.

49. Plaintiff did not start this journey on 11/24/16 as a "D Code" prisoner.

50. Plaintiff began having mental health problems shortly after being placed on RRL status.

51. Plaintiff began having suicidal dreams and attempted suicide.

52. Plaintiff was admitted to a Mental Health Unit (MHU) and then assigned a "D Code" because mental health began to deteriorate.

53. Plaintiff was placed on the DTU at SCI-Benner.

54. Plaintiff was transferred to SCI-Houtzdale on 10/28/18 and placed on the DTU.

55. On 10/28/18 Plaintiff began experience an asthma attack at approximately 4:20pm. Plaintiff informed c/o Bagley that he need him to "call medical so they can bring Plaintiff's inhaler." c/o Bagley did call medical at 4:20pm.

56. By 5:15pm no nurse ever showed up and Plaintiff was getting worst and unable to breath with severe chest pains. So Plaintiff asked c/o Bagley to call medical again. And c/o Bagley did call again.

57. After about an hour of pain and suffering Defendant John Doe finally bought Plaintiff's rescue inhaler.

58. On 10/29/18 Plaintiff began to have an asthma attack at approximately noon. Plaintiff asked the pod officer to call medical so they can "bring my inhaler down." The pod officer called medical.

59. After approximately an hour of severe chest pains and shortness of breath Plaintiff asked the pod officer to call medical again. The pod officer called medical and no one still responded.

60. As Plaintiff breathing worsened and shift changed at 2pm Plaintiff asked c/o Bagley to call medical again for Plaintiff's inhaler. c/o Bagley went and made call.

61. By 4:30 pm no one from medical still had not showed up, so Plaintiff asked c/o Bagley to call medical again. c/o Bagley made the call, came back to Plaintiff's cell and said, "the same lady picked up the phone and she told me she forgot."

62. Defendant June Doe still refused to bring Plaintiff's inhaler for another five hours at approximately 9:20pm

63. Plaintiff felt like he was gonna die from asthma attack and after Plaintiff puffed his inhaler he asked Defendant Jane Doe, "what took so long?" The response was, "we can't run down here everytime you need your inhaler."

64. On 11/07/18 c/o Woolcock, a Correctional Officer Trainee (COT) was working on the DTU doing showers and handing out meals.

65. COT Woolcock got into a argument with another prisoner and began chanting "die retard."

66. Plaintiff was personally affected by this chant mentally and submitted a grievance concerning COTs working on the DTU going against SCI-Houtzdale and DOC's policy.

67. Defendant Smith not only refused to take corrective steps to stop this practice but continues this practice to date.

68. On 11/14/18 Plaintiff submitted a grievance concerning Defendant Fetsko not making daily rounds and refusing to do Out-of-Cell (OOC) counseling.

69. There is never one single psychiatrist that does rounds everyday on the DTU going against DOC policy.

70. Because there is not one single psychiatrist assigned to the DTU Plaintiff has no one to trust in order to talk about mental health issues. And when Plaintiff makes a request for an OOC interview it is never given. Mainly because the supposed psychiatrist, Defendant Fetsko, doesn't make the round and whatever psychiatrist that do uses the excuse, "this isn't my unit. I'm just filling in."

71. Plaintiff made Defendant Salamon, Close, Ivicic and Smith aware that Defendant Fetsko was not making daily rounds and was not offering OOC counseling weekly at PRC and none of the Defendants made changes to ensure policy was followed.

72. Plaintiff submitted grievance concerning evening groups not being offered to Plaintiff.

73. According to DOC policy evening group should be scheduled. Defendants were made aware of this at PRC and Wetzel is aware and refuses to ensure this policy is followed.

74. Plaintiff submitted grievance on 3/4/19 because yard was essentially being denied to the Plaintiff. Def

11

endants Smith, Salaman, Close, Ivicic and Wetzel has a practice of making Plaintiff share clothing to go to yard.

75. Plaintiff has to make a choice of wearing coat, hat and boots that some other prisoner has worn just the other day or stay in.

76. Defendant Smith, Salaman, Close, Ivicic and Wetzel are aware that prisoners go to the yard have feces fights almost everyday. That when feces is threw it gets on coats and hats and those same coats and hats are not washed and because of clothes sharing practice Plaintiff will eventually get that coat or hat even if he's not involved in the feces fights.

77. Plaintiff began having rashes all over his head and neck from the cloth sharing policy and was forced to deny yards during winter weather.

78. On 3/3/19 Plaintiff submitted a grievance concerning the unconstitutional practice of denying Plaintiff an opportunity at physical exercise.

79. Defendant Smith, Salaman, Close, Ivicic and Wetzel has the policy that only allows Plaintiff to wear shower shoes all day knowing physical exercise is impossible and part of maintaining Plaintiff's physical and mental wellbeing.

80. Defendant Smith, Salaman, Close and Ivicic denies Plaintiff request to get his own sneakers out of his property. Even though similarly situated prisoners on RRL are allowed sneakers to exercise Defendants constantly refuses Plaintiff.

81. Defendant Salaman while making rounds on the DTU was stopped at Plaintiff's cell and asked, "why are you denying sneakers? All I want to do is exercise." Defendant Salaman responded, "you'll never get your sneakers."

82. Defendant Smith was stopped by Plaintiff at his cell and asked him, "why are sneakers and exercise being denied?" Defendant Smith responded with a lie, "you denied your sneakers."

83. On 3/24/19 Plaintiff submitted a grievance concerning the Health Care Administrator Defendant Sechrengost not processing Plaintiff's Disability Accommodation Form Request.

84. Plaintiff has not been able to attend any groups for months due to Defendants Tetsko, Smith, Salaman, Close, Ivicic and Wetzel refused to provide any mental illness health care for Plaintiffs PTSD disease.

12

85. Plaintiff has made Defendants aware that he gets flashbacks, begins to hallucinate and feel like he's being tortured while handcuffed and shackled at group.

86. Plaintiff requested any form of treatment and help so he can attend groups and Defendants told Plaintiff at PRC, "there's nothing we can do you just have to go to group or lose privileges."

87. Plaintiff then submitted the Disability Accommodation Request form asking to be transferred to another DTU, build cages to use for groups like other DTUs or send Plaintiff to a SAU.

88. Defendant Smith and Sechrengost responded that "disability is already being reasonably accommodated." Which is doing absolutely nothing. Literally no treatment at all for PTSD.

89. Plaintiff submitted grievance concerning prisoners without any mental health issues being placed on the DTU.

90. Plaintiff has made Defendant Fetsko aware that prisoners that has never dealt with mental health issues being placed on the DTU around Plaintiff is causing Plaintiff major mental health issues.

91. That when prisoners get into arguments with SMI/ID prisoners it always get to them yelling, "kill yourself." This occur all day, everyday.

92. When explaining this to Defendant Fetsko and the severe harm it causes Plaintiff hearing this all day and made to think about death and suicide all day Defendant Fetsko response was, "there's nothing I can do. Take it up with PRC."

93. Defendant Smith, Close, Salamon and Ivicic was made aware at PRC of this practice of placing anyone on the DTU to prey upon SMI/ID prisoners and the affect on Plaintiff's mental health and Defendants refuses to follow the policy.

VI. <u>Claim for Relief: Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendment Due Process Violation</u>

94. Plaintiff incorporates by reference Paragraph 1 through 93 of this Complaint

95. The Eighth Amendment prohibits cruel and unusual punishment.

96. The Fourteenth Amendment prohibits a violation of due process.

13

97. Defendants policies, practices and procedures systemically violate the Eighth Amendment rights of the Plaintiff who is mentally ill. And violates Plaintiff's Due Process rights of the Fourteenth Amendment. Such policies, practices and procedures include without limitation:

- confinement of Plaintiff and his mental illnesses in DTU for conduct directly attributable to his mental illness;
- A disciplinary system that does not give notice or hearings to place Plaintiff on RRL status and the impact of isolation in assessing whether to sanction the Plaintiff or, if so, the nature of the sanction;
- A failure to provide minimally adequate psychiatric and psychological services to Plaintiff;
- maintenance of conditions in DTU that exacerbates Plaintiff's serious mental illnesses, including near-constant isolation with little if any human contact and constant sensory deprivation;
- a disciplinary system that systemically discriminate against Black prisoners and overwhelmingly places Black prisoners on RRL than white prisoners; and
- failure to make available, maintain and utilize adequate therapeutic treatment in the DTU.

100. Defendants knows or is deliberately indifferent to the fact that the Plaintiff who has been diagnosed as having serious mental illnesses is placed in DTUs for extensive time periods and that confinement in DTU creates a substantial risk that Plaintiff's mental illnesses have been exacerbated and that Plaintiff's mental health has deteriorated. Defendants also knows or is deliberately indifferent to the fact that the mental health treatment provided to the Plaintiff is inadequate and results in the exacerbation and unnecessary prolongation of Plaintiffs' mental illnesses. The impact of long-term isolation in DTUs has been brought to Defendants attention through numerous grievances and settled lawsuits with prisoner's rights advocacy organizations. Yet, Defendants refuses to take steps to correct these systemic violation of Plaintiff's rights and even has made mental health worst that cannot be reversed.

101. Defendants has acted, or failed to act, with deliberate indifference to the health and safety of Plaintiff. As a direct and proximate result of their acts and omissions, the Eighth Amendment rights of Plaintiff have been violated, are being violated and will continue to be violated.

14

## VI. Relief

102. Plaintiff respectfully request that the Court:

A. exercise jurisdiction over this action.

B. issue appropriate declaratory relief and injunctive relief to stop the unconstitutional violations described above and to ensure that Plaintiff receive adeauate mental health care;

C. award punitive damages of $100,000 and compensatory damages of $100,000.

D. Grant such other relief as maybe appropriate.

Dated August 25, 2019

By: [signature]

Troy Cooper #BY5707
SCI-Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000